UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THOMAS A. IAZZETTI,

                                    Plaintiff,

-against-                                              No. 18-cv-6200 (NSR)
                                                        OPINION & ORDER

TOWN OF TUXEDO and MICHAEL ROST,

                                    Defendants.

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Thomas A. Iazzetti ("Plaintiff") brings this action against the Town of Tuxedo (the "Town") and Michael Rost ("Rost," and together with the Town, "Defendants") alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"). (ECF No. 5.) Plaintiff, an employee of the Town, claims that Defendants discriminated against him and created a hostile work environment on the basis of his age, and that they retaliated against him for his engagement in a protected activity. (*Id.*)

Presently before the Court is Defendants' motion to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 18.) For the reasons that follow, Defendants' motion is GRANTED.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/27/2020

1

**BACKGROUND**[1]

Plaintiff, who was 54-years-old at the time he commenced this action, has been employed with the Town of Tuxedo's Highway Department since 1994. (Compl. (ECF No. 5.) ¶¶ 14–15.) Plaintiff has also been a member of the International Brotherhood of Electrical Workers Local 363 (the "Union") since 1994. (*Id.* ¶ 16.) Plaintiff initially worked for the Town as a Machine Equipment Operator. (*Id.* ¶ 17.) He was promoted to Mechanic in 1996 and then to Head Mechanic in 1999. (*Id.* ¶¶ 18–19.)

In 2006, the Superintendent of Highways asked for volunteers to perform New York State inspections on the Town's vehicle fleet. (*Id.* ¶ 20.) Although he maintains that there was no additional pay or financial benefit being offered for taking on this responsibility, Plaintiff and two other Highway Department employees volunteered. (*Id.* ¶¶ 21–22.) Plaintiff and the two other employees were given the title of "Heavy Duty Inspector" upon completion of an eight-hour inspection course. (*Id.* ¶¶ 23–24.) However, Plaintiff remained Head Mechanic for the Town and that was his primary job. (*Id.* ¶ 29.) He never received financial benefit for his inspection services. (*Id.*)

Initially, Plaintiff was instructed to inspect the Town's vehicles. (*Id.* ¶ 25.) However, in or around January 2011, Plaintiff was instructed by the Town in an unspecified manner that he would be inspecting non-Town vehicles. (*Id.* ¶ 26.) The Town installed a sign at the Town Highway garage that read "Inspection Station" and a notice informing patrons of the Town's inspection service rates as of January 1, 2011. (*Id.* ¶¶ 26–27.) Each non-Town vehicle that was inspected was accompanied by a check made payable to the Town or was otherwise billed directly by the Town. (*Id.* ¶ 28.)

---

[1]     The facts in this section are taken from Plaintiff's Complaint, (ECF No. 5), unless otherwise specified

In or around January or February 2015, a Town employee told Plaintiff that Defendant Rost, who served as Town Supervisor, wanted Plaintiff to turn over all Department of Motor Vehicle ("DMV") inspection records (the "DMV records"). (*Id.* ¶¶ 4, 30.) Plaintiff initially refused to do so. (*Id.* ¶¶ 31–32.) However, Plaintiff's boss, Michael Marusich, ultimately forced Plaintiff to give Defendant Rost the DMV records. (*Id.* ¶ 33.) Plaintiff advised Marusich that he needed the DMV records back immediately, but Rost kept the DMV records for several weeks. (*Id.* ¶¶ 33–34.)

Plaintiff believes that at some unspecified point in time, an unnamed person on the Town Board contacted the DMV and made a complaint that inspections were being performed at the Town's garage on non-Town vehicles. (*Id.* ¶ 25.) Plaintiff is clear that he believes that person was Rost, stating that Rost "set up" Plaintiff and "blew the whistle" on Plaintiff. (*Id.* ¶ 46.) In the spring of 2015, the DMV investigated the inspection-related allegations. (*Id.* ¶ 38.) On or about March 10, 2015, after reviewing the DMV records provided to Rost, an individual affiliated with the DMV visited the Inspection Station and conducted an audit. (*Id.* ¶ 36.) Ultimately, the DMV brought charges against Plaintiff and the Town as a result of the audit. (*Id.* ¶ 47.) Plaintiff was allegedly charged with not having his inspector's card on his person, performing inspections on non-Town vehicles, "not knowing that he was not permitted to perform [such] inspections," and failing to fill out a section of his inspection paperwork properly. (*Id.* ¶ 48.) Plaintiff was the oldest employee at the garage performing inspections. (*Id.* ¶ 49.) Plaintiff states that there were "younger licensed inspectors" who had also previously performed inspections on non-Town vehicles, but those inspectors were never investigated or charged. (*Id.* ¶¶ 46, 50.)

In August 2015, Plaintiff told Defendant Rost that he was planning to run for the position

of Superintendent of Highways.  (*Id.* ¶ 39.)  Rost told Plaintiff that Rost "did not want [Plaintiff] running for that position because [Rost] wanted someone else in that position."  (*Id.*)  Thereafter, Rost told Gil Heim, a representative of the Union, that he wanted Plaintiff to be fired.  (*Id.* ¶ 40.)  At the time, Plaintiff was the second oldest employee at the Town Highway Department.  (*Id.*)  Heim told Rost Plaintiff could not be fired as part of any proposed "job cuts" to save the town money because he was unionized and had seniority.  (*Id.* ¶¶ 41, 43.)  Plaintiff states that Rost "did not want to fire the 'younger' employees of Plaintiff's department" because "he would have to fire two (2) people to equal Plaintiff's salary."  (*Id.* ¶ 42.)  Ultimately, no one from the Town Highway Department was fired at this time.  (*Id.* ¶ 43.)

In December 2015, Rost indicated to the Union that the Town was going to fire Plaintiff as a consequence of the DMV investigation.  (*Id.* ¶ 51.)  The Union advised that the Town could not fire Plaintiff for the DMV charges, since most of the charges involved inspections Plaintiff had undertaken at the Town's direction and Plaintiff was not receiving any money for the work he was performing.  (*Id.* ¶ 55.)  On December 11, 2015, the Town suspended Plaintiff without pay.  (*Id.* ¶ 57.)  On December 23, 2015, Plaintiff filed an action in the New York State Supreme Court, County of Orange, seeking immediate reinstatement or suspension with full pay and benefits.  (*Id.* ¶ 58.)  The state court lacked jurisdiction over Plaintiff's claims because the Union's collective bargaining agreement required the parties to proceed to binding arbitration.  (*Id.* ¶¶ 59–60.)  However, the Town agreed to provide Plaintiff benefits during his suspension.  (*Id.* ¶ 59.)  Arbitration was scheduled for May 19-20, 2016.  (*Id.* ¶ 63.)

In the interim, on February 3, 2016, a DMV hearing before Administrative Judge Donna Marinacci ("ALJ Marinacci") was held in relation to the charges brought against Plaintiff.  (*Id.* ¶ 64.)  On April 25, 2016, based on ALJ Marinacci's findings, the State of New York Bureau of

Consumer and Facility Services issued an order imposing a fine of $2,250.00 against Plaintiff, which Plaintiff paid immediately.  (*Id.* ¶¶ 66–67.)  However, instead of reinstating Plaintiff after he paid the fines, on May 11, 2016, the Town issued an Amended Notice of Discipline "listing more bogus charges that had been brought against Plaintiff."  (*Id.* ¶¶ 69–70.)  Plaintiff calls the charges "trumped up" but does not specify what they consisted of.  (*Id.* ¶ 69.)  The Town also sought to convert Plaintiff's suspension to a full termination.  (*Id.* ¶ 71.)  As a consequence of the new charges, the May 2016 arbitration hearing dates were moved to July 7, 2016.  (*Id.* ¶¶ 72, 84.)

On May 17, 2016,[2] Plaintiff saw Defendant Rost outside of George F. Baker High School, where Plaintiff was attending his child's spring concert.  (*Id.* ¶¶ 73–75.)  Rost attempted to shake Plaintiff's hand, but Plaintiff refused and then exchanged angry words with Rost.  (*Id.* ¶¶ 75–77.)  On May 25, 2016,[3] the Town issued a Second Amended Notice of Discipline charging Plaintiff with violating the Town's Workplace Violence Policy insofar as Plaintiff was accused of verbally and physically accosting Rost, attempting or threatening to inflict physical injury upon Rost, and causing fear to Rost.  (*Id.* ¶ 78.)  Plaintiff admits that a verbal altercation took place but denies ever touching or threatening Rost.  (*Id.* ¶ 77.)  On June 11, 2016, the Town's Police Department charged Plaintiff with harassment in the second degree.  (*Id.* ¶ 82.)  Plaintiff was originally directed to appear on that charge on July 28, 2016, but that date was moved up to June 23, 2016, prior to the arbitration date, allegedly at Defendant Rost's behest.  (*Id.* ¶¶ 83–85.)  The criminal matter was transferred to the Town of Warwick in October 2016.  (*Id.* ¶ 88.)  Ultimately, the Assistant District Attorney prosecuting the case advised Plaintiff and

---

[2]    Plaintiff states that the year in which this event took place was 2017.  (Compl. ¶ 73.)  However, since this event was the subject of proceedings that took place in 2016, the Court presumes this statement was erroneous.

[3]    Again, the Court presumes that Plaintiff's indication that this event took place in 2017, (Compl. ¶ 78), is the result of a typographical error.

Rost that the harassment charge "should have never been brought" based on a videotape recording the altercation between the two of them.  (*Id.* ¶ 97.)  The charge was dropped on May 2, 2017, and the case was sealed on May 8, 2017.  (*Id.* ¶ 98.)

The arbitration hearing regarding Plaintiff's disciplinary charges and suspension took place on July 7, 2016, and July 27, 2016.  (*Id.* ¶ 89.)  The Arbitrator issued an opinion and award on October 18, 2016, finding Plaintiff "guilty of three (3) charges[, including the charge related to the May 2016 altercation with Rost,] and not guilty on seven (7) charges."  (*Id.* ¶¶ 99–100, 103.)  The Arbitrator concluded that the Town lacked cause to terminate Plaintiff but had cause to suspend him without pay until Plaintiff was reinstated.  (*Id.* ¶ 101.)  The Arbitrator directed that Plaintiff's employment be reinstated by November 1, 2016.  (*Id.* ¶¶ 102, 105.)

The Town did not permit Plaintiff to return to work until December 12, 2016.  (*Id.* ¶¶ 106–07.)  Plaintiff received backpay for the period between November 1, 2016, and December 12, 2016, in February 2017.  (*Id.* ¶ 108.)  However, he has not been given retirement credits for that period.  (*Id.* ¶¶ 116–18.)  Upon his return, Plaintiff was "demoted" from Head Mechanic to Machine Equipment Operator.  (*Id.* ¶ 119.)  Plaintiff receives that same pay but states that the position is different because when he was suspended, he had an office in the garage, and now he does not have an office.  (*Id.* ¶¶ 119–20.)

During Plaintiff's suspension, his personal belongings were discarded, "including a $1,500 roll top desk" that he had in his office.  (*Id.* ¶ 114.)  Plaintiff has not been reimbursed for his desk.  (*Id.* ¶ 115.)  Plaintiff also states that "everyone was given the incorrect impression by Defendant Rost that Plaintiff would be terminated and would not be coming back."  (*Id.*)  Finally, Plaintiff states that on March 16, 2017, the Town publicly posted a notice that everyone in Plaintiff's department, except Plaintiff received their $500 "Clothing Budget" for the year.

Plaintiff received only $41.42 and was told by Defendant Rost that he was not entitled to a clothing allowance, but no reason was given.  (*Id.* ¶¶ 109–13.)

Plaintiff filed a charge of discrimination against the Town with the Equal Employment Opportunity Commission ("EEOC") on September 15, 2017 (*Id.* ¶ 7; Pl.'s Mem. in Opp. To Defs.' Mot. To Dismiss ("Pl. Opp.") (ECF No. 24) 18.)  He received a Dismissal and Notice of Rights issued by the EEOC on April 12, 2018.  (Compl. ¶ 7, Ex. A.)

## LEGAL STANDARD

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense."  *Id*. at 662.  A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.

7

## DISCUSSION

### I.    Plaintiff's Federal Claims

Plaintiff asserts federal claims under Title VII and the ADEA sounding in discrimination, hostile work environment, and retaliation.  (Compl. ¶¶ 122–31.)  Defendants seek to dismiss each of these claims, arguing that (1) all federal claims against Defendant Rost fail as a matter of law, (2) there is no cause of action under Title VII for age discrimination, and (3) many of Plaintiff's allegations are time-barred, and in any event, fail to plausibly state actionable claims under any of the federal statutes.  (Defs.' Mem. Of Law In Support of Mot. To Dimiss ("Defs. Mot.") (ECF No. 19) 1.)  The Court addresses each argument below.

### A.  Individual Claims Against Defendant Rost

Defendants are correct in their assertion that an individual defendant such as Rost cannot be held liable for alleged violations of Title VII or the ADEA.  (*See* Defs.' Mot. 25.)  Plaintiff's Title VII and ADEA claims can only be asserted against the Town, as neither of those statutes provide for individual liability.  *See Wilson v. Lenox Hill Hosp./Northwell Health*, No. 19-CV-5537 (AMD) (LB), 2019 WL 6726304, at *4 (E.D.N.Y. Dec. 11, 2019) ("[N]either Title VII nor the ADEA provide for individual liability; only the employer may be named.").  Furthermore, to the extent Plaintiff should seek to bring claims against Rost in his "official capacity," any such claims would be "wholly redundant to [P]laintiff's claims against [the Town] itself."  *See Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 407–08 (E.D.N.Y. 2010) (citing, *inter alia*, *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010)).

Accordingly, Plaintiff's Title VII and ADEA claims are dismissed in their entirety as against Defendant Rost with prejudice.

**B. Title VII Claims**

Title VII provides that an employer cannot discriminate against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must prove that (1) she is a member of a protected class; (2) she is qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Stratton v. Department for the Aging for City of New York*, 132 F.3d 869, 878 (2d Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Here, Plaintiff claims only that he was discriminated against on the basis of his age. (*See* Compl. ¶ 123 (erroneously claiming that "Defendant subjected the Plaintiff to discrimination on the basis of his age in violation of [Title VII]").) Age is not included as a protected class under Title VII. *See Volpe v. Conn. Dep't of Mental Health and Addiction Servs.*, 88 F. Supp. 3d 67, 72 (D. Conn. 2015) ("Courts have interpreted membership in the protected classes narrowly and strictly textual.") Since Plaintiff has not alleged that he is a member of one of Title VII's protected classes, Plaintiff's Title VII claims are dismissed without prejudice.

**C. ADEA Claims**

**1. Timeliness of Plaintiff's ADEA Claims**

A plaintiff who wishes to bring a claim under the ADEA must first file an EEOC discrimination charge within 300 days of the date of the alleged unlawful practice. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325–29 (2d Cir. 1999); *Harris v. City of New York*, 186 F.3d 243, 247–48 (2d Cir. 1999). If not filed within this timeframe, the claim is time-barred. *See Staten v. City of New York*, No. 14 CIV. 4307(ER), 2015 WL 4461688, at *8

(S.D.N.Y. July 20, 2015) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109

(2002)).  Here, Plaintiff alleges that he filed his administrative charge with the EEOC on

September 15, 2017.  (Pl. Opp. 18.)  Therefore, any alleged incidents of discrimination that

occurred before November 19, 2016 (*i.e.*, 300 days prior to September 15, 2017) are time-barred.

Plaintiff nevertheless argues that his time-barred claims can still be considered under the

continuing violation doctrine.  (Pl. Opp. 13–18.)  Under that doctrine, if "a plaintiff has

experienced a continuous practice and policy of discrimination, . . . the commencement of the

statute of limitations period may be delayed until the last discriminatory act in furtherance of it."

*Washington v. Cty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (alterations in original)

(quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 349 (2d Cir. 2001)).  The doctrine is "'heavily

disfavored in the Second Circuit' and courts have been 'loath' to apply it absent a showing of

'compelling circumstances.'"  *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11

(S.D.N.Y. 2006).

"To qualify as continuing, the claimed actions must not be 'discrete acts,' but 'repeated

conduct' that 'occurs over a series of days or perhaps years.'"  *Dash v. Bd. of Educ. of City Sch.

Dist. of N.Y.*, 238 F. Supp. 3d 375, 388 (E.D.N.Y. 2017) (quoting *Morgan*, 536 U.S. at 115).

Examples of discrete acts "include disparate disciplining, negative performance reviews,

termination, failure to promote, and denial of a preferred job position."  *Zoulas v. N.Y.C. Dep't of

Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019) (collecting cases).  "[M]ultiple incidents of

discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism

do not amount to a continuing violation."  *Zabar v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6657

(PGG), 2020 WL 2423450, at *4 (S.D.N.Y. May 12, 2020) (quoting *Lambert v. Genesee Hosp.*,

10 F.3d 46, 53 (2d Cir. 1993)).

Conversely, it is generally true that "[h]ostile work environment claims fall within the continuing violation framework." *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 582 (S.D.N.Y. 2017). These claims "may . . . be based on events outside the statute of limitations period as long as (1) the acts occurring before the . . . cutoff constitute part of the same actionable hostile work environment practice, and (2) at least one act contributing to the claim occurs within the filing period." *Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 359 (S.D.N.Y. 2016) (internal quotations and citations omitted). Furthermore, to be part of the same actionable hostile-work-environment practice, the timely offensive incident must be "sufficiently related" to incidents outside of the limitations period. *See Taylor v. City of New York*, 207 F. Supp. 3d 293, 309 (S.D.N.Y. 2016).

Plaintiff argues that he "was subjected to a string of discriminatory conduct by the Town because the Town wanted to fire him based upon his age." (Pl. Opp. 16.) This conduct consisted of (1) the DMV's investigation and charging of Plaintiff, allegedly prompted by Rost, in early 2015; (2) the Town's suspension of Plaintiff without pay on December 11, 2015; (3) the Town's issuance of notices of discipline against Plaintiff based on the DMV investigation and the altercation between Plaintiff and Rost in May 2016; (4) Plaintiff's demotion to Machine Equipment Operator on December 12, 2016; (5) the Town's failure to correct Plaintiff's return-to-work date for purposes of his retirement credits; and (6) the Town's failure to provide Plaintiff his $500 clothing allowance on March 16, 2017, and public disclosure of such failure. (Pl. Opp. 16–18.) Plaintiff also claims that his desk and personal belongings were discarded during his suspension and that "everyone was given the incorrect impression by Defendant Rost that Plaintiff was terminated and would not be coming back." (Compl. ¶¶ 114–15; Pl. Opp. 17–18.)

Essentially, Plaintiff argues that his demotion was the culmination of a protracted attempt to terminate Plaintiff in order to avoid paying him the salary his seniority required.  Plaintiff links each disciplinary action taken against him to Rost's purported desire, expressed in August 2015, to take cost-cutting measures in Plaintiff's department.  (*See* Pl. Opp. 16 (stating that the "chain of events" began with the pretextual DMV investigation because the Town "really wanted to fire Plaintiff" and could not do so due to his seniority); Compl. ¶¶ 51–54 (linking Plaintiff's December 2015 suspension without pay to Rost's attempt to fire Plaintiff as a "job cut" in August 2015).)  According to Plaintiff, Rost's desire to terminate Plaintiff rather than two younger employees to save the same amount of money shows discriminatory animus based on Plaintiff's age, and so every action that precedes or follows, whether taken by Rost or another Town decisionmaker, is tainted by that same animus and constitutes a continuing violation.  (*See* Pl. Opp. 18 (describing all actions taken against Plaintiff as incidents "in furtherance of an ongoing policy of discrimination against him").)

By characterizing the disciplinary actions taken against him in this manner, Plaintiff attempts to convert discrete adverse employment actions into an actionable hostile work environment practice.  However, discriminatory discipline, suspension, and demotion are precisely the kind of "discrete acts" that fall outside the purview of the continuing violation doctrine.  *See Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012) ("[A]n allegation of an ongoing discriminatory policy does not extend the statute of limitations where the individual effects of the policy that give rise to the claim are merely discrete acts."); *Zoulas*, 400 F. Supp. 3d at 50 ("Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position."); *Dickens v. Hudson Sheraton Corp.,*

12

*LLC*, 167 F. Supp. 3d 499, 516 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017) ("Discrete acts that occur outside the limitations period (such as failure to promote, demotion, or termination), however, 'cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period.'" (citations omitted)); *Ellis v. Long Island R.R.Co.*, No. 05–CV–3847, 2008 WL 838766, at *4 (E.D.N.Y. March 31, 2008) (discipline should not be considered part of a continuing violation); *Daniels v. Niagara Mohawk Power Corp.*, No. 04–CV–0734S, 2007 WL 925759, at *4 (W.D.N.Y. March 26, 2007) (discriminatory transfer, suspension, discipline, promotion, compensation and the like are discrete acts of discrimination).  Plaintiff may not circumvent the limitations period by merely recasting his unexhausted discrete claims regarding prior disciplinary actions as a hostile work environment claim.  *See Morgan*, 536 U.S. at 111 (rejecting the view that a pattern of "related discrete acts" could constitute one continuous "unlawful employment practice" for the purposes of the statute of limitations).

Furthermore, while Plaintiff attempts to shoehorn his suspension-derived claim into the limitations period by arguing that his suspension was still in effect on November 19, 2016, the Supreme Court is clear that discrete discriminatory acts "occur" on the date that they "happen." *Id.* at 110.  Therefore, Plaintiff was required to file a charge within 300 days of the date his suspension went into effect or lose the ability to recover for it.  *Id.*  While Plaintiff was well aware he had suffered a legal injury at the time of his suspension, immediately filing an action in state court against his employer, (*see* Compl. ¶ 58), he made no allegations of unlawful discrimination until the commencement of this suit.

For the foregoing reasons, Plaintiff's claims deriving from the DMV investigation, disciplinary charges brought against him, and his suspension, all of which took place well before

November 19, 2016, are time-barred.  To the extent Plaintiff's ADEA claims are premised on the foregoing occurrences, they are dismissed with prejudice.  Of course, "even with respect to a claim of discrete discriminatory or retaliatory acts, expiration of the limitations period does not bar 'an employee from using the prior acts as background evidence in support of a timely claim.'"  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Morgan*, 536 U.S. at 113).  The Court may thus consider occurrences outside the limitations period insofar as they may be relevant to assessing liability for the timely alleged acts.

### 2.  Discrimination Claims

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  This protection covers "individuals who are at least 40 years of age." *Id.* § 631(a).  To state an ADEA discrimination claim, a plaintiff must allege that (1) he or she was "within the protected age group," (2) he or she was "qualified for the position," (3) he or she "experienced adverse employment action," and (4) "such action occurred under circumstances giving rise to an inference of discrimination."  *Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). On a motion to dismiss, a court "need determine only 'whether the allegations in the complaint give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of a litigation."  *Miller v. Dep't of Educ. of City of N.Y.*, No. 17-CV-594 (JPO), 2018 WL 1468703, at *2 (S.D.N.Y. Mar. 23, 2018) (quoting *Dressler v. City Sch. Dist. of N.Y.C.*, No. 15-cv-3696 (JPO), 2016 WL 4367967, at *3 (S.D.N.Y. Aug. 15, 2016)).

It is undisputed that Plaintiff, born in 1963, falls within the ADEA's protected age group. As identified above, Plaintiff's timely claims of discrimination include (1) his demotion to Machine Equipment Operator, (2) the Town's failure to correct Plaintiff's return-to-work date for purposes of his retirement credits, (3) the Town's failure to provide Plaintiff his $500 clothing allowance, (4) the Town's removal of his desk and personal belongings, and (5) the impression given to Plaintiff's colleagues by Defendant Rost that Plaintiff had been terminated. Some, but not all, of these occurrences constitute "adverse employment actions" for purposes of the statute.

An adverse employment action occurs if an employee "endures a 'materially adverse change' in the terms and conditions of employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000)). To be materially adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Woolfolk v. N.Y.C. Dep't of Educ.*, No. 19-CV-3706 (RA), 2020 WL 1285835, at *6 (S.D.N.Y. Mar. 18, 2020) (quoting *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018)). "A change that is 'materially adverse' could consist of, *inter alia*, 'a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Zoulas*, 400 F. Supp. 3d at 53 (quoting *Kassner*, 496 F.3d at 238).

The fact that Plaintiff's colleagues believed he had been terminated when he was absent for a year does not constitute an adverse employment action, as Plaintiff has pleaded no facts to suggest he suffered any specific employment-related consequence as a result. *See Pimentel v. City of N.Y.*, No. 00 Civ. 326, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002) ("[N]ot

everything that makes an employee unhappy is an actionable adverse action." (internal citations and quotation marks omitted)).  Nor did Plaintiff suffer a materially adverse change in the conditions of his employment when his desk and other unnamed personal belongings were discarded at some point during his absence.  *See Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 435 (E.D.N.Y. 2015) (allegation that upon return to work plaintiff's papers were disrupted, personal items were missing, and the lock on her desk had been broken did not rise to the level of an "adverse employment action").[4]

Conversely, Plaintiff's demotion, which resulted in a purportedly less distinguished title and the loss of his office, may constitute an adverse employment action.  *See Zoulas*, 400 F. Supp. 3d at 53.  Similarly, Plaintiff's material loss of benefits including retirement credits and a $500 clothing allowance can be deemed more than a mere inconvenience.  *See Aiola v. Malverne Union Free Sch. Dist.*, No. 15 Civ. 54, 2017 WL 3917018, at *6 (E.D.N.Y. Sept. 5, 2017) (loss of stipend "plainly constitutes an adverse employment action").  Even if all of Plaintiff's claims constituted adverse employment actions, however, they fall victim to a larger defect: the allegations fail to establish an inference of discriminatory intent.

In general, a plaintiff must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent."[5]  *Luka v. Bard College*, 263 F. Supp. 3d 478,

---

[4]     However, this type of allegation may support a hostile work environment claim in certain cases.  *See Terry v. Ashcroft*, 336 F.3d 128, 149 (2d Cir. 2003) (allegations that colleague broke into plaintiff's desk and purposefully discarded some of his personal belongings in order to harass him, coupled with claims that plaintiff's supervisors told colleagues he was "nuts," having a "nervous breakdown," suffered from "emotional problems" and made threats against employees on a near-daily basis sufficient to create issue of fact on hostile work environment claim).

[5]     Courts in this circuit have split on whether a plaintiff in an ADEA case must plead "but-for" causation or merely provide minimal support of a discriminatory intent.  *Compare Woolfolk v. N.Y.C. Dep't of Educ.*, No. 19-CV-3706 (RA), 2020 WL 1285835, at *6 (S.D.N.Y. Mar. 18, 2020) (ruling that "'an ADEA complaint must contain sufficient facts to make plausible the conclusion that 'but for' [her] age,' Plaintiff would not have suffered the adverse employment action") *with Zoulas*, 400 F. Supp. 3d at 52 (following the "minimal inference" standard for a motion to dismiss rather than the "but-for" causation standard espoused in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).  Although, in the Court's view, the clear weight of authority appears to militate in favor of applying a "but-for" causation pleading standard under the ADEA, the Court need not decide this issue because Plaintiff has

16

484–85 (S.D.N.Y. 2017) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir.

2015)).  "An inference of discrimination can arise from a variety of circumstances, including but

not limited to, the employer's criticism of the plaintiff's performance in . . . degrading terms

[based on a protected characteristic]; [] its invidious comments about others in the employee's

protected group; [] the more favorable treatment of employees not in the protected group; or the

sequence of events leading to plaintiff's discharge." *Pustilnik v. Battery Park City Auth.*, No. 18-

CV-9446 (RA), 2019 WL 6498711, at *4 (S.D.N.Y. Dec. 3, 2019) (internal quotation and

citation omitted).  Thus, a plaintiff may sustain an age discrimination claim by pleading facts

showing direct discriminatory animus or by pleading disparate treatment.  A plaintiff claiming

disparate treatment must allege that he was "similarly situated in all material respects" to the

individuals with whom he seeks to compare himself.  *Graham v. Long Island R. R.*, 230 F.3d 34,

39 (2d Cir. 2000); *see Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

      With respect to disparate treatment, a plaintiff merely alleging that he was disciplined,

demoted or terminated, while others outside of his protected class were not, does not state an

ADEA discrimination claim.  "[W]ithout any reference to specific statements or individual

circumstances that suggest discriminatory treatment, [such] allegations do not support a finding

that defendants acted with a discriminatory purpose." *Burgis v. N.Y.C. Dep't of Sanitation*, 798

F.3d 63, 69 (2d Cir. 2015); *see also Johnson v. Andy Frain Servs., Inc.*, 683 F. App'x, 68, 70–71

(2d Cir. 2016) (finding ADEA discrimination claims properly dismissed where plaintiff claimed

she was fired while co-worker outside of her protected class was not because Plaintiff failed to

allege that her co-worker had similar job descriptions or responsibilities).  Moreover, "[w]hile

allegations that a younger employee has been favored over a qualified plaintiff can be sufficient

---

failed to establish even the requisite "minimal inference" of discriminatory intent necessary to survive a motion to
dismiss.

to provide the basis for an inference of discrimination," *Luka*, 263 F. Supp. 3d at 486, "no inference of age discrimination can be drawn 'from the replacement of one worker with another worker insignificantly younger." *Lomonoco v. Saint Anne Inst.*, 768 F. App'x 43, 44 (2d Cir. 2019) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)); *see also Pustilnik*, 2019 WL 6498711 at *5 (finding no inference of discrimination where both plaintiff and her replacement were "over the age of 40" and thus "within the same protected class").

Here, Plaintiff alleges that Rost wanted to terminate him in August 2015 to save the Town's money without having to terminate two younger employees.  (Compl. ¶¶ 40–43.)  As a preliminary matter, it is unclear from the Complaint whether Rost actually expressed that he preferred to terminate one older employee as opposed to two younger employees, or whether Plaintiff is stating his own legal conclusions.  In any event, even if Rost explicitly stated that he wanted to terminate Plaintiff to avoid paying his higher salary, his motivations would not be deemed discriminatory.  "Courts have repeatedly held—even at the motion to dismiss stage— that 'cost-savings' actions by employers, such as terminating employees with higher salaries, are based on a reasonable factor other than age and thus do not violate the ADEA, even though such an action will likely have a disparate impact on older employees." *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 543 (S.D.N.Y. 2016) (collecting cases).

Moreover, the connection between Rost's stated desire to terminate Plaintiff in order to cut costs in August 2015 and Plaintiff's demotion and loss of employment related benefits in December 2016, over a year later, and beyond, is tenuous.  *See Luka*, 263 F. Supp. 3d at 487 (explaining that remarks about age that were neither "made close in time nor in relation to the specific employment decision" did not raise an inference of discrimination).  Importantly, Plaintiff was provided the same salary upon his demotion and his only stated losses were a

change in title and his deprivation of an office at the garage.  Given that Plaintiff's salary was unchanged, it is particularly difficult to perceive how this action fits into Plaintiff's theory that he was discriminated against because he was an older, more highly paid employee.  Similarly, such comparatively trivial deprivations as the loss of Plaintiff's clothing stipend and a month of retirement credits do not plausibly appear to have been motivated by Rost's desire to cut costs. Plaintiff has not even pleaded that Rost was the person who made the decision to apply such deprivations.

Plaintiff does not allege any other discriminatory comments or overt discriminatory conduct directed against him or other employees based on their age.  Instead, Plaintiff alleges that since disciplinary actions, including demotion, were taken against him and not against younger employees who committed the same infractions he was found guilty of, an inference of discrimination can be drawn.  (*See* Pl. Opp. 19.)  However, Plaintiff has not provided any specific facts about these "younger employees."  The Court can ascertain only that they were younger than Plaintiff's 54 years by some unspecified amount, that they also inspected an unspecified number of non-Town vehicles at the Inspection Station, and that no disciplinary actions were taken against them.  It is not clear whether they were over 40, whether their infractions were identical in number and nature to Plaintiff's, whether they also held the title of "Head Mechanic," and whether they reported to the same individuals as Plaintiff.  In short, Plaintiff does not establish that he was similarly situated in all material respects with any employees outside the ADEA's protected class.

Consequently, Plaintiff fails to state a claim sounding in discrimination under the ADEA. His ADEA discrimination claims are dismissed without prejudice.

### 3.   Hostile Work Environment Claims

The ADEA prohibits "'requiring people to work in a discriminatorily hostile or abusive environment.'"  *Davis-Garett*, 921 F.3d at 41 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).  The standards for assessing a hostile work environment claim under the ADEA are analogous to those utilized under Title VII.  *See id.* (analyzing ADEA hostile work environment claim based on standards announced in cases involving claims of hostile work environment discrimination under both Title VII and the ADEA).  Thus, the ADEA is "violated when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Id.*  Under the ADEA, "[a] work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it because of conduct based on the plaintiff's over-40 age."  *Id.* at 41 (quotation marks omitted) (citation omitted).

"As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).  To assess a hostile work environment claim, courts consider "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with [the] employee's work performance."  *Harris*, 510 U.S. at 23.  "Minor incidents do not merit relief."  *Kasner v. 2ⁿᵈ Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007).  Importantly, a plaintiff must "demonstrate that she was subjected to the hostility because of her membership in a protected class."  *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999); *see Alfano*, 294 F.3d at 377 (behavior that is "harsh, unjust, and rude" does not

rise to the level of a hostile work environment where there is no indication that such behavior is linked or correlated to the claimed ground of discrimination).

Plaintiff's hostile work environment claim here is based on the same conduct he alleged in support of his discrimination claim. Specifically, Plaintiff claims that following his demotion he learned that his colleagues believed he had been terminated, his belongings were discarded, he no longer had an office, and he was denied a month of retirement credits and a $500 clothing allowance. Even if the Court were to look beyond the statute of limitations, the only additional conduct alleged other than the discrete disciplinary actions taken against Plaintiff, which are necessarily time-barred, is Defendant Rost's refusal to support Plaintiff in his bid for Superintendent of Highways.

None of that conduct, most of which took place on single occasions over an approximately three-month period, comes close to meeting the standards of severity or pervasiveness required to state a hostile work environment claim. *See Trachtenberg v. Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d. 460, 472–73 (S.D.N.Y. 2013) (allegations of two years of "excessive scrutiny" from supervisor, negative performance evaluations, "scurrilous charges" from supervisor, transfer to a poorly ventilated office, and refusal of training opportunities fell "well short of" sufficiently severe and pervasive conduct) (collecting cases where courts have found insufficient evidence of hostile work environment). In addition, as the Court has discussed, there is no basis for inferring that such conduct took place *because of* Plaintiff's age. Accordingly, Plaintiff's hostile work environment claims under the ADEA are dismissed without prejudice.

### 4. Retaliation Claims

To establish a *prima facie* case of retaliation, a plaintiff must show "(1) the employee was engaged in an activity protected by [the applicable statute], (2) the employer was aware of that

activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Furk v. Orange-Ulster BOCES*, No. 15-cv-6594 (NSR), 2016 WL 6560408, at *3 (S.D.N.Y. Nov. 2, 2016) (quoting *Moore*, 2016 WL 825001 at *4). At the pleading stage, the allegations of retaliation "need only give plausible support to the reduced prima facie requirements." *Littlejohn*, 795 F.3d at 316. In other words, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

Plaintiff has not alleged that he engaged in any protected activity opposing an unlawful employment practice. Indeed, he does not identify any complaint he ever made related to perceived age discrimination prior to filing the instant action. Accordingly, Plaintiff's retaliation claims under the ADEA are dismissed.

## II.   NYSHRL Claims

Plaintiff brings state law claims against Defendants under the NYSHRL for age discrimination. In their moving papers, Defendants argue that Plaintiff's NYSHRL claims fail for the same reasons as his federal claims fail. (Defs. Mot. 22–25.)

Before the Court assesses the viability of Plaintiff's NYSHRL claims, however, it must first determine whether to exercise supplemental jurisdiction over those claims, given that it has dismissed all of Plaintiff's federal claims. Federal courts have supplemental jurisdiction over non-federal claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But in the event a court dismisses "all claims over which it has original jurisdiction," it "may decline to exercise

supplemental jurisdiction" over those non-federal claims.  *Id.* § 1367(c)(3).  When deciding

whether to exercise supplemental jurisdiction over a claim, a district court should "consider and

weigh . . . the values of judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  "[I]n the usual case in which all federal-law claims

are eliminated before trial, the balance of factors . . . will point toward declining jurisdiction over

the remaining state-law claims."  *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 61 (2d Cir.

1998) (internal citations and quotations omitted).

Here, however, the balance of factors supports exercising supplemental jurisdiction over

Plaintiff's NYSHRL claims.  The standards of the ADEA and the NYSHRL are virtually

identical (as discussed below) and would be applied to the same set of facts.  Moreover, because

the standards are identical, deciding the NYSHRL claims would not require an investment of

additional judicial resources, and there would be no comity issues triggered.  *See Oliver v. N.Y.S.*

*Police*, No. 1:19-cv-233 (BKS/DJS), 2020 WL 1849484, at *10 (N.D.N.Y. Apr. 13, 2020)

("However, where, as here, the 'standards of liability are identical under [federal law] and the

NYSHRL[,] deciding the state-law claims does not require the investment of additional judicial

resources,' and there is no 'substantial comity concern raised by this Court's application of state

law with which courts in this District are eminently familiar,' the Court concludes 'the values of

judicial economy, convenience, fairness, and comity,' support the exercise of supplemental

jurisdiction over Plaintiff's NYSHRL claims." (internal quotations omitted)); *Henry v. NYC*

*Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413 (S.D.N.Y. 2014) (same).

Having decided that it will continue to exercise supplemental jurisdiction, the Court now

turns to Plaintiff's NYSHRL claims.

### A.  Timeliness of Plaintiff's NYSHRL Claims

In general, claims arising under the NYSHRL are subject to a three-year statute of limitations.  *See George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 436 (S.D.N.Y. 2016).  Although the Second Circuit has yet to decide the issue, numerous courts in this Circuit have determined that the filing of an EEOC charge generally tolls the statute of limitations on related NYSHRL claims.  *Schneider v. Wal-Mart Stores, Inc.*, No. 16-cv-2010 (NSR), 2019 WL 294309, at *3 (S.D.N.Y. Jan. 23, 2019) (collecting cases); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013) ("The limitations period [for a NYSHRL claims] tolls . . . during the period in which a complaint is filed with the EEOC and the issuance by the EEOC of a right-to-sue letter.").

Plaintiff commenced this action on July 9, 2018.  (ECF No. 1.)  Accordingly, without any tolling, any claims accruing prior to July 9, 2015, are time-barred.  Plaintiff, however, filed his administrative charge with the EEOC on September 15, 2017, and the EEOC issued its "right to sue" letter 209 days later on April 12, 2018, thereby tolling the statute of limitations during that period.  *See DeNigris v. N.Y.C. Health and Hosp. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) (explaining that the statute of limitations under the NYSHRL is tolled "for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter").  As Plaintiff proceeded to file his Complaint 88 days after he received his "right to sue" letter, his NYSHRL claims that accrued on, or after, March 10, 2015—*i.e.*,  121 days prior to Plaintiff's filing of his administrative charge with the EEOC—now fall within the limitations period.  Conversely, any NYSHRL claim based on conduct occurring prior to March 10, 2015, is time-barred.  Therefore, as to the NYSHRL claims falling outside of the statute of limitations, the Court GRANTS Defendants' motion to dismiss, with prejudice.

### i.   Merits

Plaintiff's NYSHRL claims can be swiftly disposed of on the merits.  It is well established that claims for discrimination, retaliation, and a hostile work environment under the NYSHRL are analyzed under the same legal framework as its federal counterparts.  *See Zabar*, 2020 WL 2423450 at *6 n.7 ("The standard for demonstrating a hostile work environment is the same under Title VII . . . and the NYSHRL." (quoting *Leftridge*, 2020 WL 1503665 at *11)); *Dipinto v. Westchester Cty.*, No. 18-CV-793 (KMK), 2019 WL 4142493 at *8 (S.D.N.Y. Aug. 30, 2019) ("The NYSHRL contains a similar provision against retaliation . . . and is governed by the same standard."); *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 176–77 (E.D.N.Y. 2017) (standards for retaliation under ADEA and NYSHRL are the same); *Rupert v. City of Rochester, Dep't of Envtl. Servs.*, 701 F. Supp. 2d 430, 438 (W.D.N.Y. 2010) (explaining that discrimination "claims under the NYSHRL are analyzed under the same legal framework as ADEA claims"); *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 184 n.14 (S.D.N.Y. 2013) ("ADEA and NYSHRL claims for hostile work environment are analyzed under the same standards, and therefore I will not address Plaintiffs' NYSHRL claims separately.").  As a result, the Court's analysis regarding Plaintiff's federal claims applies with equal force to his NYSHRL claims.  And for the same reasons Plaintiff's federal claims were deficient, dismissal of Plaintiff's NYSHRL claims against the Town is plainly warranted.

To the extent the Court may now consider claims that were time-barred under the federal statutes, including those arising from Plaintiff's suspension in December 2015, this conclusion is not altered.  As the Court has discussed, the Complaint lacks even a minimal inference of discrimination on the basis of age.  This is fatal to all of Plaintiff's age discrimination claims, regardless of when they occurred.

In contrast to the ADEA, however, the NYSHRL allows for "[i]ndividuals who are not a plaintiff's employer to be held liable for aiding and abetting discriminatory or retaliatory conduct." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 451 (S.D.N.Y. 2018); *see also* N.Y. Exec. Law § 296(6) ("It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."). But, because Plaintiff has failed to establish violations of Title VII or the ADEA—and, therefore, the NYSHRL—against the Town, there is no basis on the face of the Complaint to impute aider and abettor liability to Defendant Rost. *See Johnson v. City of New York*, 18-CV-9600 (AJN), 2020 WL 2036708, at *5 (S.D.N.Y. Apr. 28, 2020) (dismissing NYSHRL aiding and abetting claim because plaintiff failed to plead an underlying violation of the statutes).

In conclusion, the Court GRANTS Defendants' motion to dismiss Plaintiff's timely NYSHRL claims as against both the Town and Defendant Rost, without prejudice.

## III.    Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted). When exercising this discretion, courts consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, the Court will grant Plaintiff leave to file an amended complaint as to those claims dismissed without prejudice. Notwithstanding the above explained deficiencies, Plaintiff could potentially plead facts that cure his Complaint's various defects. Although Plaintiff certainly has high hurdles to overcome, leave to amend in this case would not necessarily be futile at this juncture. Furthermore, as this case is still in its infancy, there would be minimal prejudice to Defendants in permitting Plaintiff to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is GRANTED. The Court, however, grants Plaintiff leave to file an amended complaint in accordance with this Order as to those claims not dismissed with prejudice. If he chooses to do so, Plaintiff has until August 28, 2020 to file his amended complaint. Defendants are then directed to answer or otherwise respond by September 28, 2020. Failure to file an amended complaint within the time allowed, and without good cause, will result in the dismissal of Plaintiff's claims with prejudice.

The Clerk of Court is directed to terminate the motion at ECF No. 18.

Dated:   July 27, 2020
      White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge